UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:                                                     Case No.: 6:18-bk-06259-KSJ

DANA MICALLEF
     Debtor.
_____/

## **DEBTOR'S RESPONSE TO TRUSTEE'S MOTION FOR TURNOVER**

Debtor, Dana Micallef, by and through his undersigned attorney, hereby responds to the Trustee's Motion for Turnover (Doc. 114) as follows:

1. Debtor admits the Trustee's allegations set forth in paragraphs 1 through 5.

2. The Debtor acknowledges his duty to cooperate with the Trustee as necessary to liquidate the property and to otherwise perform her duties, both under the Order Sustaining Trustee's Objection to Exemption and the Bankruptcy Code.

3. As to paragraph 6, the Debtor agrees that both prior to and after the Order Sustaining Trustee's Objection to Exemption, the parties have continued negotiations to either allow Debtor to retain the property through a buyback, or retain possession until a sale by the Trustee. In fact, in one email from Trustee's counsel in August, it was proposed that if the buyback could not be completed, the Debtor would be allowed to live in the home while it is listed and shown, with an expectation of four months before a likely sale. This proposal also included certain conditions imposed on Debtor, which were acceptable.

4. Debtor disputes the Trustee's assertions in paragraph 7 that she is concerned about the state of the house, and that damage or neglect may be occurring, although no supporting facts are provided.

5. The Trustee's first request for access to the property was during a phone call with the undersigned counsel, confirmed by email dated September 23rd, wherein the name of trustee's realtor was provided. In addition, the undersigned provided Debtor's phone contact as requested.

6. The Debtor's undersigned counsel experienced the death of an immediate family member on September 23rd, causing his absence from the office though the first week of October.

7. The Debtor's first contact with Trustee's realtor was October 2nd, wherein he requested that her inspection be delayed as discussions were continuing regarding his buyback of the property, hopefully obviating any need for the inspection.

8. By email dated October 8th, the Trustee expressed concerns that her realtor had still not had access, although the Debtor had arranged that day for an inspection to occur on October 15th. At Debtor's s request, this meeting was re-scheduled for 2 days later, October 17th.

9. On October 17th, the realtor and her photographer completed their inspection and videotaping of the property without interference or lack of cooperation from Debtor.

10. The property in question was purchased by Debtor in June, 2016, as the principal residence for himself, his 3 year old daughter, his fianc'e and her minor daughter. In addition, his adult brother, who is 100% disabled from a childhood brain injury, resides at the property.

11. Since the purchase, Debtor has expended considerable time and money in renovating and improving the property, as acknowledge by the Trustee in the Objection, with some repairs remaining incomplete due to the closing of his business American Consumer Credit, in mid-2018, and resulting lack of funds to complete such repairs. Otherwise the property is maintained in good condition and repair.

12. In the event Debtor is unable to complete a buyback of the property, the Debtor agrees with the Trustee's goal to maximize the value of the property in order to maximize the distribution to the IRS's priority and secured claims as set forth in its proof of claim.

13. As such, Debtor and all occupants, if allowed to remain on the property, will maintain and keep clean the property while listed and shown for sale, vacate after reasonable notice if necessary for any viewings.

14. In addition, before any sale of the property by the Trustee, an application to retain a realtor would be required with an Order approving same. Also, as part of any sale, the Internal Revenue Service's recorded tax lien would need to be either transferred to priority status or transferred to the proceeds in order for a sale to be free and clear of such lien, both procedures which will cause delays in closing any sale.

15. To the extent of any disputed facts regarding Debtor's alleged lack of cooperation and/or damage to the property, Debtor requests an evidentiary hearing to determine such disputed facts.

## Certificate of Service

I HEREBY CERTIFY that I have furnished a copy of the above and foregoing via Electronic Notice to Cynthia E. Lewis at clewis@lewismonroe.com; this 17th day of November, 2019.

SNELL & SNELL, P.A.

By: _____
WALTER J. SNELL, ESQ.
Florida Bar #729360
436 N. Peninsula Drive
Daytona Beach, FL 32118
(386) 255-5334/(386)-255-5335-fax
Attorney for Debtor
Email: snellandsnell@mindspring.com
snellandsnell@hotmail.com